**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SANDRA LORANDEAU | : | CIVIL ACTION |
| v. | : | |
| CAPITAL COLLECTION SERVICE | : | NO. 10-3807 |

**MEMORANDUM RE: SUMMARY JUDGMENT MOTION**

**Baylson, J.**                                                    **September 8, 2011**

## I.      Introduction

This action arises out of a notice dated April 15, 2010 sent by Defendant Nosoma

Systems, Inc. t/a Capital Collection Service ("Defendant") to Plaintiff Sandra Lorandeau

("Plaintiff") concerning collection of a debt owed to Abington Memorial Hospital.  Plaintiff filed

this civil action alleging that Defendant's notice violated the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. § 1692 et seq. and seeks compensatory and statutory damages.  Currently

before the Court is Defendant's Motion for Summary Judgment (ECF No. 17).

For the following reasons, Defendant's Motion for Summary Judgment will be granted.

## II.      Factual and Procedural Background

### A.      Factual History

Plaintiff, a Pennsylvania resident, received medical services at Abington Memorial

Hospital on June 12, 2009.  Dep. of Sandra J. Lorandeau ("Pl.'s Dep."), June 14, 2011 at 7:13-

20, 11:23-12:14 (Defendant's Appendix to Summary Judgment Brief ("D.A.") 7, 11-12).

Plaintiff does not recall receiving any bills from Abington Memorial Hospital or statements from

her medical insurer for services performed on June 12, 2009.  Id. at 12:19-22; 13:24-14:19 (D.A.

-1-

12-14). Plaintiff believes she does not owe money to Abington Memorial Hospital for the June 12, 2009 services because she did not receive a bill. Id. at 14:20-15:2 (D.A. 14-15). Plaintiff did not do anything to determine whether she in fact owed money to Abington Memorial Hospital. Id. at 41:21-42:9 (D.A. 41-42). Abington Memorial Hospital's internal records indicate it sent Plaintiff a bill to her home address on August 1, 2009 for $120.00, the patient's balance for the procedure. February 3, 2011 printout (D.A. 95-96); Certificate of Pauline Conway ("Conway Certif.") ¶¶ 3-4 (D.A. 110-11).[1]

Plaintiff paid $20.00 to Abington Memorial Hospital that was credited on September 30, 2009. Feb. 3, 2011 printout (D.A. 97); Conway Certif. ¶ 5 (D.A. 111). Plaintiff paid $10.00 to Abington Memorial Hospital that was credited on October 29, 2009. Feb. 11, 2003 printout (D.A. 98); Conway Certif. ¶ 6 (D.A. 111). Plaintiff does not recall making the $30 worth of payments. Pl.'s Dep. 47:1-3 (D.A. 47). The balance was transferred as "bad debt" on December 18, 2009, and transferred to Defendant for collection on January 1, 2010. Feb. 3, 2011 printout (D.A. 103); Conway Certif. ¶ 7 (D.A. 111).

Defendant sent a notice to Plaintiff's residence dated January 13, 2010 (the "January 13, 2010 notice") seeking payment of the debt, which included the following information beneath the payment slip:

CAPITAL COLLECTION SERVICE

Re: OP-ABINGTON MEMORIAL HOSPITAL        Amount Due: $ 90.00

---

[1] Plaintiff challenges the authenticity of the Hospital records because they were attached to the affidavit of a Hospital employee not identified as the Custodian of Records nor does it state that the records are kept in the regular course of business. Plaintiff's Response to Defendant's Statement of Undisputed Facts and Plaintiff's Statement of Undisputed Facts ("PSUF") PSUF ¶ 10.

Since: 6/12/09                                          Account #: 0977972240

D.A. 79.  The January 13, 2010 notice contained information regarding Plaintiff's right to dispute

the validity of the debt within thirty days.  Id.[2]

On January 24, 2010, a check drawn on the account of Gary and Sandra Lorandeau was

made out to Defendant Capital Collection Services in the amount of $5.00, on which the memo

line is written: "0977972240."  D.A. 82.  The back of the check was stamped reflecting that

Defendant deposited it on January 27, 2010.  Id.  Plaintiff testified that she signed the check.

Pl.'s Dep. 20:6-8 (D.A. 20).  Plaintiff further testified that she did not recall receiving

Defendant's January 13, 2010 notice in the mail, but acknowledged "[t]hey must have sent me

something in the mail" in response to which she made the $5.00 payment, and it was "possible"

she received the notice and mailed the check as a result.  Id. at 22:16-24, 24:16-21 (D.A. 22, 24).[3]

Defendant forwarded the $5.00 payment to Abington Memorial Hospital and her balance was

reduced to $85.00 on March 30, 2010.  Feb. 3, 2011 printout (D.A. 99); Conway Certif. ¶ 7 (D.A.

111).

Plaintiff testified that she thought she was making a payment to Abington Surgical

Center, to which she owed money for a different procedure.  Pl.'s Dep. at 18:19-19:13 (D.A. 18-

19).  Plaintiff received medical services at Abington Surgical Center on July 10, 2009.  Id. at

29:9-13 (D.A. 29); Abington Surgical Center, P.C. bill, account number 3113707, dated April 9,

---

[2] The notice uses the statutorily-required language of 15 U.S.C. § 1642g.

[3] Plaintiff also admits in her response brief that she responded to the January 13, 2010
letter: "Since the $5.00 payment made by the Plaintiff is a response to Defendant's January 13th
letter, the statement on the April 15th letter claiming that Plaintiff 'did not respond to our first
notice' is a 'false, deceptive, or misleading' statement in connection with the collection of a debt,
as defined by § 1692e."  Pl.'s Resp. 10.

2010 (D.A. 69).  Plaintiff thought "Abington Memorial Hospital" was synonymous with

"Abington Surgical Center."  Affidavit of Sandra Lorandeau, dated July 24, 2011 ("Pl.'s Aff.") ¶

14 (Ex. A to Pl.'s Resp. to Def.'s Mot. Summary J.).

      Plaintiff received a notice from Defendant dated April 15, 2010 (the "April 15, 2010

notice"), which she thought at the time was the first notice she received from Defendant.  Pl.'s

Dep. 31:8-25 (D.A. 31-32).  The April 15, 2010 notice states information including the following

beneath the payment slip:

CAPITAL COLLECTION SERVICE

Re: OP-ABINGTON MEMORIAL HOSPITAL     Amount Due: $ 85.00

Since: 6/12/09              Our File Number #: 100130392

D.A. 80.  The body of the April 15, 2010 notice states:

FINAL NOTICE

WE MUST HAVE YOUR CALL

(856) 768-4224

This is An Attempt to Collect a Debt.
Any Information Obtained Will Be Used for That Purpose

.

> You did not respond to our first notice sent to
> you telling you that your creditor has
> assigned this account to us for collection.

RETURN THE ABOVE STUB WITH YOUR PAYMENT.

For your convenience, payment may be made by visiting our web address at www.payccs.net.

GUARD YOUR CREDIT AS A SACRED TRUST.

D.A. 80.

-4-

Plaintiff believed the letter was threatening to attack her credit, meaning they would put it on her credit report, although she acknowledged the notice does not say so.  Pl.'s Dep. 33:1-20 (D.A. 33).  Plaintiff believed the matter could possibly result in legal action.  Pl.'s Aff. at ¶ 13. Plaintiff was alarmed by the statements "FINAL NOTICE," "WE MUST HAVE YOUR CALL," and "GUARD YOUR CREDIT AS A SACRED TRUST," in the April 15, 2010 notice.  Id. at ¶ 12.

In her Affidavit, Plaintiff asserts she does not recollect owing a debt to Abington Memorial Hospital and disputes that she owes a debt.  Pl.'s Aff. ¶¶ 3-4.

After the $30.00 in payments that Plaintiff made directly to Abington Memorial Hospital and the $5.00 that Plaintiff paid to Defendant, Plaintiff owes Abington Memorial Hospital a balance of $85.00.  (D.A. 85).

**B.     Procedural History**

Plaintiff filed the complaint in this action on July 30, 2010 (ECF No. 1).  On March 1, 2011, Plaintiff filed a motion for leave to amend her complaint (ECF No. 7) and attached the Amended Complaint (ECF No. 7, Ex. A).  This Court entered an Order (ECF No. 8) on March 4, 2011 that the case would proceed to arbitration on the facts and legal theories alleged by Plaintiff in the Amended Complaint without the necessity of the Amended Complaint being filed, and denied the motion to amend as moot.  That Order also permitted Defendant to file a motion for summary judgment following the arbitration decision.

The Amended Complaint alleges one count for violation of the FDCPA, including one or more of the following provisions:  a) § 1692d, harassing or abusing Plaintiff in connection with the collection of a debt;  b) § 1692e, using false, deceptive, or misleading representations in

connection with collection of a debt;  c) § 1692e(10), using false representations or deceptive means to collect or attempt to collect a debt or obtain information concerning Plaintiff;  d) § 1692e(11), failing to disclose in subsequent communications that the communication is from a debt collector);  e) § 1692f, using unfair or unconscionable means to collect a debt;  f) § 1692f(1) collecting an amount not authorized by the agreement creating the debt; and g) the catchall allegation that Defendant acted in an otherwise deceptive, unfair and unconscionable manner. Plaintiff attached the notice dated April 15, 2010 that Defendant sent Plaintiff (Compl. Ex. A).

Following arbitration and the entry of an arbitration award, Defendant requested trial de novo on May 6, 2011.  Defendant filed this Motion for Summary Judgment on July 13, 2011 (ECF No. 17), proceeding on the facts and legal theories alleged in the Amended Complaint. Plaintiff filed her response on August 2, 2011 (ECF No. 18).  Defendant replied on August 5, 2011 (ECF No. 19).  Plaintiff filed a motion for leave to file a sur-reply on August 12, 2011 (ECF No. 20).

### III.   The Parties' Contentions

First, Defendant contends that as a matter of law, its failure to use the verbatim phrase "debt collector" in the April 15, 2010 notice did not violate the disclosure provisions for subsequent communications from a debt collector to a consumer.  Second, Defendant contends that the boxed text in the April 15, 2010 notice, stating that Plaintiff failed to respond to a first notice, was not deceptive, because Plaintiff's $5.00 partial payment sent in response to the first notice was credited, and because Plaintiff did not "respond" when she failed to pay the entire amount due.  Third, Defendant contends that Plaintiff produced no evidence that Defendant purposely omitted from the April 15, 2010 notice the original account number of the debt (i.e.,

Abington Memorial Hospital's number for Plaintiff's account) and instead included Defendant's internal file number.  The April 15, 2010 notice was clear because it indicated the amount of the debt, the creditor, and the date the debt was incurred.  Fourth, Defendant contends that the statements "FINAL NOTICE," "WE MUST HAVE YOUR CALL," and "GUARD YOUR CREDIT AS A SACRED TRUST," were not harassing and did not create a false sense of urgency.  Fifth, Defendant contends that it has shown Plaintiff owed the debt to Abington Memorial Hospital and Plaintiff has not met her burden to substantiate her claim that she does not owe the debt; for instance, Plaintiff has not contested the reasonableness of the charges with the hospital.

Plaintiff responds that Defendant's Motion for Summary Judgment should be denied because there are genuine material facts in dispute concerning the April 15, 2010 notice. Plaintiff contends that Defendant's failure to state explicitly that it was a "debt collector," statement that Plaintiff failed to respond to a previous collection letter, and omission of the original account number of the debt, were deceptive and confusing.  Plaintiff further asserts that she interpreted the statements "FINAL NOTICE," "WE MUST HAVE YOUR CALL," and "GUARD YOUR CREDIT AS A SACRED TRUST," to mean that Defendant would take legal action against her and notify credit reporting bureaus of the debt, which was alarming, harassing, and designed to create a false sense of urgency.  Finally, Plaintiff contends that Defendant violated § 1692e and § 1692f(1) by attempting to collect a debt that Plaintiff disputes owing.

IV.    **Legal Standards**

   A.    **Jurisdiction**

   Jurisdiction is proper under 28 U.S.C. § 1331, 15 U.S.C. § 1692k(d), and 28 U.S.C. §

1367.

**B.      Standard of Review**

Summary judgment is appropriate if the movant can show "that there is no genuine

dispute as to any material fact and that the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  A dispute is "genuine" if the evidence is such that a reasonable jury could

return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248,

(1986). A factual dispute is "material" if it might affect the outcome of the case under governing

law. Id.

Where the non-moving party bears the burden of proof on a particular issue at trial, the

moving party's initial burden can be met simply by "pointing out to the district court ... that there

is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477

U.S. 317, 325 (1986).  Summary judgment is appropriate if the non-moving party fails to rebut

by making a factual showing "sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at

322. Under Rule 56, the Court must view the evidence presented on the motion in the light most

favorable to the opposing party.  Anderson, 477 U.S. at 255.

Reliance on "'conclusory, self-serving affidavits [is] insufficient to withstand a motion

for summary judgment.'"  Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 161 (3d

Cir. 2009) (quoting Blair v. Scott Specialty Gases, 283 F.3d 595, 608 (3d Cir. 2002)).  "Instead,

the affiant must set forth specific facts that reveal a genuine issue of material fact."  Id.

**V.      Discussion**

Congress passed the FDCPA "to eliminate abusive debt collection practices by debt

collectors [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged. . ."  15 U.S.C. § 1692(e) (West 2011). Section 1692k provides consumers with a private cause of action against debt collectors.  "The FDCPA is a strict liability statute to the extent it imposes liability without proof of an intentional violation."  Allen ex rel. Martin v. LaSalle Bank, N.A., 629 F.3d 364, 368 (3d Cir. 2011).

The FDCPA is a "remedial statute" that courts construe broadly to effect its purpose. Brown v. Card Serv. Ctr., 464 F.3d 450, 453 (3d Cir. 2006) (citations omitted).  Therefore, the courts analyze communications from lenders to debtors that might give rise to an FDCPA claim from the perspective of the "least sophisticated debtor," in order "to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd."  Id. at 453-54.  This standard provides more protection for consumers than a "reasonable debtor" standard.  Id. at 454 (citing Wilson v. Quadramed Corp., 225 F.3d 350, 354 (3d Cir. 2000)).  "However, while the least sophisticated debtor standard protects naive consumers, 'it also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care.'"  Id. (quoting Quadramed, 225 F.3d at 354-55).

Under the least sophisticated debtor standard, "it is not necessary for a plaintiff to show that she herself was confused by the communication she received; it is sufficient for a plaintiff to demonstrate that the least sophisticated consumer would be confused."  Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85, 91 (2d Cir. 2008); see also Adams v. Law Offices of Stuckert & Yates, 926 F. Supp. 521, 527 (E.D. Pa. 1996) (Joyner, J.) (discussing least sophisticated debtor standard as "objective").  On the other hand, "[i]f it is apparent from a reading of the letter that

not even a significant fraction of the population would be misled by it. . . the court should reject it without requiring evidence beyond the letter itself." Taylor v. Cavalry Inv. LLC, 365 F.3d 572, 574-75 (7th Cir. 2004) (citations and internal quotation marks omitted).  In the Third Circuit, "whether language in a collection letter contradicts or overshadows the validation notice is a question of law." Quadramed, 225 F.3d at 353 n.2.

Applying the least sophisticated debtor standard, the Court will analyze Plaintiff's cause of action for violation of the FDCPA.  This Count is comprised of five distinct claims, discussed below.

### A.  Subsequent Notice Disclosure Requirements -- Section 1692e(11)

The FDCPA provides bifurcated disclosure requirements for initial notices and subsequent notices.[4]  Initial communications must disclose "that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose."  15 U.S.C. § 1692e(11).  Subsequent communications must disclose that "the communication is from a debt collector." 15 U.S.C. § 1692e(11).

Courts interpreting the FDCPA have found that a communication need not use the exact language of 1692(e)(11) to comply with the statute.  For example, in Emanuel v. Am. Credit Exch., 870 F.2d 805 (2d Cir. 1989), the plaintiff contended that a communication was deficient for failure to state that "it was a collection letter nor that any information obtained by American Credit would be used to collect the debt, even though the letter "stated that Emanuel's account

---

[4] Prior to Congress's amendment of 15 U.S.C. § 1692e(11) in 1996, the statute provided that, in general, "the failure to disclose clearly in all communications made to collect a debt or to obtain information about a consumer, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose" was an FDCPA violation.  History to 15 U.S.C. § 1692e(11) (emphasis added).

-10-

had been turned over to American Credit 'for immediate collection,'" and "told Emanuel how and where to make payment so as to satisfy the indebtedness." Id. at 808.   The Second Circuit rejected the plaintiff's argument that the debt collector violated the FDCPA in this regard, because "there simply is no requirement that the letter quote verbatim the language of the statute." Id. (reversing the judgment dismissing the plaintiff's FDCPA claim on other grounds). Similarly, in Volden v. Innovative Financial Systems, Inc., 440 F.3d 947 (8th Cir. 2006), the Eighth Circuit found that "[t]hough the letter does not say it is from a debt collector, the fact it says it is sent in an attempt to collect a debt is sufficient for even the unsophisticated consumer to understand that such a letter is necessarily from a 'debt collector.'" Id. at 955 (affirming district court's entry of summary judgment for debt collector on FDCPA claim, including alleged violation of § 1692e(11)). See also Epps v. Etan Indus., Civ. A. No. 97 C 8770, 1998 WL 851488, at *9 (N.D. Ill. Dec. 1, 1998) (Castillo, J.) (granting summary judgment for debt collector and denying summary judgment for plaintiff on § 1692e(11) claim where "it is abundantly clear that CPA was seeking to collect a debt" and "clearly notifies an unsophisticated consumer that "THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE'. . .").

The cases that Plaintiff cites in her response brief do not support her contention that Defendant was required to print the verbatim phrase "debt collector" in the notice.  Pl.'s Resp. 4-7.  For example, in Albanese v. Portnoff Law Associates, Ltd., 301 F. Supp. 2d 389 (E.D. Pa. 2004), Judge Katz found that the debt collector's subsequent communications to the debtor failed to make disclosures pursuant to Section 1692e(11), not that they failed to use the phrase "debt collector" explicitly, as Plaintiff suggests.  Id. at 402 (denying cross-motions for summary

judgment).  In <u>Schwarm v. Craighead</u>, 552 F. Supp. 2d 1056 (E.D. Cal. 2008), Judge Shubb

granted the plaintiff's motion for summary judgment where nine of the subsequent

communications "omit[ted] any reference to debt collection," "state[d] that the letters are giving

the check writer 'the opportunity to avoid possible criminal prosecution,'" "state[d] that

'criminal sanctions are pending,'" and in one case "even negate[d] the requisite language, stating:

'This is not a Civil issue under 15 USC 1692e requiring the following statement: "This is an

attempt to collect a debt and any information obtained will be used for that purpose." This is a

Criminal issue under Penal Code 476a.'" <u>Id.</u> at 1081-82 (internal citations omitted).  These

violations of § 1692e(11) in <u>Schwarm</u> did not concern use of the verbatim phrase "debt

collector."  The other cases Plaintiff cited are similarly distinguishable.  <u>See</u> <u>Del Campo v. Am.</u>

<u>Corrective Counseling Serv., Inc.</u>, 718 F. Supp. 2d 1116, 1136 (N.D. Cal. 2010) (Ware, J.)

(granting plaintiffs' motion for summary judgment and denying debt collector's cross-motion for

summary judgment on § 1692e(11) claim because "on their face, [the] written communications

with check writers did not contain the statutorily-required disclosures," and the debt collector

was not exempt from the disclosure requirements); <u>Winberry v. United Collection Bureau, Inc.</u>,

697 F. Supp. 2d 1279, 1291 (M.D. Ala. 2010) (Albritton, J.) (denying summary judgment to debt

collector on § 1692e(11) claim, where plaintiffs "received phone messages from [an agent of the

debt collector] in which he identified himself by name, but did not identify that he was a debt

collector"); <u>Masciarelli v. Richard J. Boudreau & Assocs., LLC</u>, 529 F. Supp. 2d 183, 185 (D.

Mass. 2007) (Alexander, M.J.) (holding that a reasonable jury could not return a verdict in debt

collector's favor where he left a voice-mail message for the plaintiff that "failed to disclose [his]

identity as a debt collector in violation of the FDCPA," which "violated the FDCPA as a matter

of law," and granting plaintiff's motion for partial summary judgment on the FDCPA claim).

In their briefs, Plaintiff and Defendant both discuss <u>Rosenau v. Unifund Corp.</u>, 539 F.3d 218 (3d Cir. 2008), a case in which the plaintiff claimed that a communication stating, "this communication is from a debt collector," that was signed by the "Unifund Legal Department," violated the FDCPA.  <u>Id.</u> at 219-20.  The district court held that the letter was not deceptive and granted judgment on the pleadings to the defendant.  <u>Id.</u> at 221.  The Third Circuit reversed, holding that there was a material question of fact whether the least sophisticated debtor would find it deceptive whether the communication was sent from a debt collector or an attorney.  <u>Id.</u> at 223.  <u>Rosenau</u> is not on point, as it concerned a violation of Section1692e(3), not e(11).[5]  It does not stand for the proposition that the phrase "debt collector" must be used explicitly, but rather for the proposition that a notice is deceptive under Section1692e if other text contradicts the disclosure that the notice if from a debt collector.

Here, the April 15, 2010 communication from Defendant to Plaintiff explicitly states: "This is an attempt to collect a debt.  Any information obtained will be used for that purpose." This language sufficiently identified Defendant as a debt collector without using the verbatim phrase "debt collector."  Indeed, Defendant used the very same language that Judge Castillo held made it "abundantly clear" that the notice was from a debt collector.  <u>Epps v. Etan Indus.</u>, 1998 WL 851488, at *9.  This case is unlike any of the cases on which Plaintiff relies, in which the debt collector omitted any reference to debt collection, explicitly disclaimed that the notice concerned debt collection, or left a phone message without identifying the profession of the

---

[5] Section 1692e(3) provides that "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney" is a violation of the FDCPA.

caller.  See Schwarm, 552 F. Supp. 2d at 1081-82; Winberry, 697 F. Supp. 2d at 1291;

Masciarelli, 529 F. Supp. 2d at 185.

Plaintiff cannot impose liability on Defendant for her own willful blindness or failure to

read the text.  See Campuzano-Burgos v. Midland Credit Mgmt., Inc., 550 F.3d 294, 299 (3d Cir.

2008).  The Court finds as a matter of law that the least sophisticated debtor who read the April

15, 2010 notice as a whole would understand that the notice is from a debt collector.  Therefore,

the Court will grant summary judgment to Defendant as to the alleged violation of § 1692e(11).

### B.   Statement that Plaintiff Did Not Respond to First Notice – Section 1692e

15 U.S.C. § 1692e generally prohibits the use of "any false, deceptive, or misleading

representation or means in connection with the collection of any debt."  Under the FDCPA, "'[a]

debt collection letter is deceptive where it can be reasonably read to have two or more different

meanings, one of which is inaccurate.'"  Rosenau, 539 F.3d at 222 (quoting Brown, 464 F.3d at

455)).  In Rosenau, the Third Circuit explained that "[t]he question that this claim turns upon is

how the least sophisticated debtor would interpret the fact that the letter came from Unifund's

Legal Department."  Id.  The court found that "[c]ontrary to the District Court's determination, it

is possible that a debtor receiving a collection letter from Unifund could reasonably infer that the

Legal Department contains attorneys who played a role in writing or sending the letter.  Thus,

Unifund has not 'clearly establishe[d] that no material issue of fact remains to be resolved and

that it is entitled to judgment as a matter of law.'"  Id. (quoting Jablonski v. Pan Am. World

Airways, Inc., 863 F.2d 289, 290-91 (3d Cir. 1988)) (reversing the District Court's grant of

judgment on the pleadings for the defendant).  See also LeBlanc v. Unifund CCR Partners, 601

F.3d 1185, 1197 (11th Cir. 2010) ("[W]here the parties reasonably disagree on the proper

-14-

inferences that can be drawn from the debt collector's letter, resolution is for the trier of fact-not for the court on summary judgment.").

At least three Circuit Courts have held that a statement that is technically false but not deceptive is not actionable under the FDCPA. As the Seventh Circuit explained in <u>Wahl v. Midland Credit Management, Inc.</u>, 556 F.3d 643, 645-46 (7th Cir. 2009): "If a statement would not mislead the unsophisticated consumer, it does not violate the FDCPA-even if it is false in some technical sense. For purposes of § 1692e, then, a statement isn't 'false' unless it would confuse the unsophisticated consumer." Thus, in <u>Wahl</u>, the plaintiff could not defeat summary judgment "simply by showing that [defendant]'s use of the term "principal balance" is false in a technical sense; she has to show that it would mislead the unsophisticated consumer." <u>Id.</u> at 646 (affirming summary judgment for the defendant). <u>Accord</u> <u>Donohue v. Quick Collect, Inc.</u>, 592 F.3d 1027, 1033 (9th Cir. 2010); <u>Miller v. Javitch, Block & Rathbone</u>, 561 F.3d 588, 596 (6th Cir. 2009). The Third Circuit has not yet ruled. <u>See</u> <u>Mushinsky v. Nelson, Watson & Assoc., LLC</u>, 642 F. Supp. 2d 470, 473 (E.D. Pa. 2009) (Dalzell, J.) (discussing but not ruling on whether to adopt the Seventh Circuit's approach to falsity in <u>Wahl</u> in a decision denying a motion for judgment on the pleadings, where the statement at issue was alleged to be not only false but also deceptive and misleading).

In this case, Plaintiff alleges that the statement in the April 15, 2010 notice, "You did not respond to our first notice sent to you telling you that your creditor has assigned this account to us for collection," was deceptive. However, Plaintiff has not shown what reasonable two or more meanings, at least one of which is inaccurate, could be inferred from this statement to render it misleading under the Third Circuit's definition of "deceptive" in <u>Rosenau</u>. Rather, the

-15-

statement appears to be false in a technical sense, because Plaintiff <u>did</u> respond to the January 13, 2010 notice by sending a $5.00 payment.

The approach of the Sixth, Seventh, and Ninth Circuits to technical falsity is persuasive. Plaintiff has not established any genuine dispute of material fact as to whether the statement, even if false, would actually mislead the least sophisticated debtor.  Defendant credited Plaintiff's January 24, 2010 payment in the "amount due" line on the April 15, 2010 notice, which reflected an $85.00 balance, as opposed to a $90.00 on the initial notice.  (D.A. 79, 80). The least sophisticated consumer would see the "amount due" line and understand that the $5.00 payment was credited by the debt collector.  Therefore, the Court will grant Defendant's motion for summary judgment motion with respect to this alleged violation of Section 1692e.[6]

### C.     Omission of the Abington Memorial Hospital Account Number - Section 1692e

Plaintiff alleges that the April 15, 2010 notice also violated Section 1692e by omitting "Account #: 0977972240," which was on the January 13, 2010 notice, and including "Our File Number #: 100130392."  However, the name of the creditor was the same on both notices ("Abington Memorial Hospital"), the date the debt was incurred was the same on both notices ("6/12/09"), and the amount due was $5.00 less than the amount due in the earlier notice ($85.00

---

[6] On summary judgment, Defendant does not contend that the statement regarding failure to respond to the first notice was a bona fide error under 15 U.S.C. § 1692k(c), although Defendant raised the defense in its Answer (ECF No. 2).  The Court can consider "other materials in the record" on a motion for summary judgment. Fed. R. Civ. P. 56(c)(3).  To establish the bona fide error defense, Defendant has to show that "(1) the alleged violation was unintentional, (2) the alleged violation resulted from a bona fide error, and (3) the bona fide error occurred despite procedures designed to avoid such errors." <u>Beck v. Maximus, Inc.</u>, 457 F.3d 291, 297-98 (3d Cir. 2006) (citations omitted).  Defendant has not submitted evidence to establish all three elements of the bona fide defense; therefore, the Court does not rule on that basis.

instead of $90.00), reflecting Plaintiff's $5.00 payment in response to the first notice.  D.A. 79-

80.  Moreover, the notice clearly stated that the new number was an internal "file" number

belonging to Defendant, not a new "account" number.  The least sophisticated debtor could have

determined from the information on the April 15, 2010 notice that it referred to the same debt as

the January 13, 2010 notice.  Any confusion that Plaintiff experienced was due to her own

misunderstanding, unrelated to any action by Defendant.[7]

The Court finds as a matter of law that the omission of the account number was not

deceptive, false, or misleading in violation of Section 1692e, and will grant summary judgment

to Defendant on this claim.

### D.   Statements Intended to Threaten or Create a False Sense of Urgency – Sections 1692d, 1692e(10)

Under the FDCPA, "[a] debt collector may not engage in any conduct the natural

consequence of which is to harass, oppress, or abuse any person in connection with the collection

of a debt." 15 U.S.C. § 1692d.  The statute states six illustrations of abusive behavior, including

"[t]he use or threat of use of violence or other criminal means to harm the physical person,

reputation, or property of any person"; "[t]he use of obscene or profane language or language the

natural consequence of which is to abuse the hearer or reader"; and "[c]ausing a telephone to ring

or engaging any person in telephone conversation repeatedly or continuously with intent to

---

[7] Plaintiff's argument that the inclusion of the account number would have helped her to determine whether the debt transferred to Defendant was from Abington Memorial Hospital or Abington Surgical Center is not persuasive.  Both notices clearly stated that the debt owed was to Abington Memorial Hospital, and the initial notice did include the account number used by the Abington Memorial Hospital, which Plaintiff wrote on the memo line of her $5.00 check.  D.A. 82.  However, Plaintiff still claims that she thought the $5.00 check was paying a debt at Abington Surgical Center.  Pl.'s Dep. at 18:19-19:13 (D.A. 18-19).  Plaintiff does not have an FDCPA claim for her own error or willful blindness.

annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(1),(2),(5).

Summary judgment on a 1692(d) claim "may be appropriate where the specific conduct at issue

unequivocally has--or does not have--the natural consequence of harassing, oppressing, or

abusing the consumer as a matter of law." Regan v. Law Offices of Edwin A. Abrahamsen &

Associates, P.C., Civ. A. No. 08-5923, 2009 WL 4396299, at *6 (E.D. Pa. Dec. 1, 2009) (Yohn,

J.) (denying summary judgment to plaintiff on claim that defendant made harassing phone calls

because the court could not say as a matter of law that communications were harassing, and a

material question of fact existed as to the pattern of the calls); see also Horkey v. J.V.D.B. &

Assocs., Inc., 333 F.3d 769, 773 (7th Cir. 2003) (affirming summary judgment for plaintiff on §

1692d claim where undisputed evidence showed that debt collector had left message for plaintiff

containing expletives); Poulin v. The Thomas Agency, 760 F. Supp. 2d 151, 162 (D. Me. 2011)

(Singal, J.) (granting summary judgment to debt collector on claim for credit reporting Plaintiff's

debt, because as a matter of law this was not harassing, oppressive, or abusive under § 1692d).

     The FDCPA also prohibits a debt collector from making "use of any false representation

or deceptive means to collect or attempt to collect any debt or to obtain information concerning a

consumer." 15 U.S.C. § 1692e(10).  In Goswami v. American Collections Enterprise, Inc., 377

F.3d 488 (5th Cir. 2004), the plaintiff alleged that a communication created a false sense of

urgency where it stated "only during the next thirty days, will our client agree to settle your

outstanding balance due with a thirty (30%) percent discount off your above balance owed,"

when in fact, the debt collector was authorized by the creditor to give debtors a 30% discount off

their balance at any time.  Id. at 495.  The Fifth Circuit agreed with the plaintiff that it was

deceptive about the settlement offer with regard to the time and what the agency was authorized

to do.  Id. at 496 (reversing the district court's order granting summary judgment to the debt

collector as to the claim concerning statements that created a false sense of urgency in violation

of §1692e(10)).

In Wilson v. Quadramed Corp., 225 F.3d 350 (3d Cir. 2000), the Third Circuit explained

that in determining whether a communication conveys a false sense of urgency, the court should

assess "the nature of the threats of future action if payment is not made within the demand

period."  Id. at 360 n.6.  A debt collector's threats to take "specific action" if the debtor does not

pay "have been found to overshadow the validation notice and cause the debtor to overlook his

statutory right to dispute the debt."  Id.  The Third Circuit found that the "avoid further action"

phrase at issue in Quadramed "does not convey a sense of urgency or a threat of specific action

which overshadows the validation notice" in violation of Section 1692e(10).  Id. ("find[ing] the

least sophisticated debtor in this case would not feel pressured to overlook his statutory right to

dispute the validity of the debt after reading Quadramed's letter").  Cf. Graziano v. Harrison, 950

F.2d 107, 111 (3d Cir. 1991) (finding but not holding that a debt collector violated Section

1692e(10) by demanding payment within ten days and threatening immediate legal action if such

payment was not made, when in fact under the statutory notice the plaintiff had thirty days to

dispute the debt).  See also Lox v. CDA Ltd., Civ. A. No. 10-1042, 2011 WL 2610201, at *7

(C.D. Ill. July 1, 2011) (Gorman, M.J.) (denying plaintiff's motion for summary judgment and

granting defendant's motion for summary judgment where on Section 1692e(10) claim

concerning statements "Final notice" and  "To avoid further steps, respond within 48 hours,"

where plaintiff had the burden "to produce extrinsic evidence of how the statements would

mislead or deceive the reasonable, unsophisticated consumer," and "no such evidence—beyond

-19-

his own self-serving statements—has been produced").

Here, Plaintiff alleged that Defendant used alarming language in the April 15, 2010 notice, i.e., "FINAL NOTICE,"  "WE MUST HAVE YOUR CALL," and "GUARD YOUR CREDIT AS A SACRED TRUST."  As a matter of law, the Court finds that these statements did not have the natural consequence of harassing, oppressing, or abusing the consumer as a matter of law.  These statements do not contain a threat, even a veiled one, and are nothing like the illustrated violations in 1629d, such as a harassing pattern of phone calls or use of profanity.

Moreover, the language Plaintiff challenges in the notice does not establish any demand period in which Plaintiff must respond that would create a false sense of urgency.  The April 15, 2010 notice does not tell Plaintiff to respond within any particular time frame.  Nor does the notice threaten to take any specific action, such as legal action or reporting Plaintiff to a credit bureau.  Plaintiff has not produced any extrinsic evidence of how the statement would mislead or deceive other than her own self-serving testimony that she was alarmed by the sentence, "Guard your credit as a sacred trust."  Therefore, the Court will grant summary judgment to Defendant on claims concerning these statements that arise under Section 1692d and Section 1692(e)(10).

### E.    Attempting to Collect a Disputed Debt - Section 1692e, 1692f(1)

Lastly, Defendant argues that there is no genuine dispute of material fact to prevent summary judgment on Plaintiff's claim that Defendant is collecting a disputed debt under Section 1692e or 1692f(1).  Section 1692f prohibits a debt collector from using any "unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  One illustration of that provision is: "The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly

authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).  In

other words, the debt collector may not tack on additional unauthorized collection fees.  See

Seeger v. AFNI, Inc., 548 F.3d 1107, 1113 (7th Cir. 2008) (affirming summary judgment for

plaintiffs where debt collector charged a fee that was not authorized in the agreements between

plaintiffs and the assignors of the account).

      A plaintiff in an FDCPA case cannot defeat the defendant's summary judgment motion

with merely self-serving testimony or affidavits.  In Pettit v. Retrieval Masters Creditors Bureau,

Inc., 211 F.3d 1057 (7th Cir. 2000), the plaintiff attempted to create a genuine issue of material

fact as to her FDCPA claim that a debt collector's notice was misleading by relying on "her own

self-serving deposition testimony that [defendant's] name led her to believe that the company

was a credit bureau" rather than a debt collector.  Id. at 1061-62.  The Seventh Circuit affirmed

the district court's grant of summary judgment for the debt collector, holding that plaintiff's

testimony "fails to create a genuine issue as to whether a significant fraction of the population

would have believed the same thing after reading this letter," because "[t]he self-serving opinion

of the plaintiff, clearly not an expert or an objective observer, does not create a genuine issue for

trial."  Id.  See also Nationwide Mut. Ins. Co. v. Roth, 252 F. App'x 505, 508 (3d Cir. 2007)

(non-precedential) (holding that in an insurance dispute, "[a]gainst the overwhelming

documentary record evidence, [plaintiff] cannot rely on his self-serving affidavit to avoid

summary judgment"); Miller v. Javitch, Block & Rathbone, 534 F. Supp. 2d 772, 776 (S.D. Ohio

2008) (Barrett, J.), aff'd, 561 F.3d 588 (6th Cir. 2009) (granting defendant's motion for partial

summary judgment on an FDCPA claim where plaintiff submitted a self-serving affidavit by her

counsel and "no surveys, no expert opinion, nothing to demonstrate that a genuine issue of fact

exists").

In this case, the only amount that Defendant sought to collect is the balance of Plaintiff's account owed to Abington Memorial Hospital.  The $85.00 balance on the April 15, 2010 notice (D.A. 79) is equal to the $85.00 balance on Abington Memorial Hospital's bills and internal records.  (D.A. 85, 102).  No evidence has been submitted to the Court of any unconscionable means that Defendant used to collect the debt.  Therefore, Plaintiff has no claim pursuant to Section 1692f or any of its illustrations, including Section 1692f(1).

Nor does Plaintiff have a claim that collection of the debt is false, deceptive, or misleading in violation of § 1692e, including Section 1692e(2)(A), which bars deception as to "the character, amount, or legal status of any debt."  Plaintiff testified that she does not believe she owes Abington Memorial Hospital money and has stated in her affidavit that she disputes the debt.  Pl.'s Dep. 14:20-15:2 (D.A. 14-15); Pl.'s Aff. ¶ 4.

However, the facts in the undisputed record belie Plaintiff's own statements.  Plaintiff does not present any facts to cast doubt on Abington Memorial Hospital's records or their accuracy.  Plaintiff made payments of $10.00 and $20.00 directly to Abington Memorial Hospital, and made a $5.00 payment to Defendant.  D.A. 82, 97-99, 111.  She received credit for these payments.   Whether she recalls making these payments is irrelevant.  Pl.'s Dep. 47:1-3 (D.A. 47).  There is no evidence that Plaintiff took any action to contest the debt, either contacting directly Abington Memorial Hospital or following the validation procedure in the initial debt collection notice.  Plaintiff's testimony that she was confused about whether she was paying Abington Memorial Hospital or Abington Surgical Center was does not give rise to Defendant's FDCPA liability, because the bill and Defendant's communications clearly referred

-22-

to "Abington Memorial Hospital," and Plaintiff's confusion was not a result of Defendant's conduct.  (D.A. 78-80).  Plaintiff's conclusory, self-serving statements are not sufficient to create a material dispute of fact to survive a motion for summary judgment.

Plaintiff cites a distinguishable case, Velazquez v. NCO Financial Systems, Inc., Civ. A. No. 2:11–CV–00263, 2011 WL 2135633, at *4 (E.D. Pa. May 31, 2011) (Kelly, J.), for the proposition that she was not required to dispute the debt prior to filing suit.  In Velazquez, Judge Kelly denied a motion to dismiss the plaintiff's FDCPA claim, finding that the plaintiff's failure to dispute the debt did not preclude her lawsuit because "Velazquez is not solely alleging that the debt is invalid. . . [but also] alleges that NCO's conduct amounts to unfair and unconscionable collection practices."  Id.  Judge Kelly distinguished Bleich v. Revenue Maximization Group, Inc., 233 F. Supp. 2d 496, 501 (E.D.N.Y. 2002) (Wexler, J.) and Palmer v. I.C. Sys., Inc., Civ. A. No. C–04–03237, 2005 WL 3001877, at *5 (N.D. Cal. Nov. 8, 2005) (Whyte, J.), two cases in the same procedural posture as this case, that "dealt with FDCPA claims at the summary judgment stage and held that a plaintiff cannot state a cause of action solely based upon the collector's attempt to collect an invalid debt without following the dispute procedures provided in § 1692(g)."  Velazquez, 2011 WL 2135633, at *3.  Cf. Burdett v. Harrah's Kansas Casino Corp., 294 F. Supp. 2d 1215, 1227 (D. Kan. 2003) (Vratil, J.) (debt collector "is not entitled to summary judgment, however, just because the [plaintiffs] did not dispute the validity or request verification of the debts").

Here, Plaintiff has not set forth any specific facts that reveal a genuine issue of material fact as to whether she has disputed the debt.  Therefore, Plaintiff does not have an independent claim for an FDCPA violation based on Defendant's attempt to collect an invalid debt under

Sections 1692e.  The Court will grant summary judgment for Defendant on Plaintiff's claim for

collecting a disputed debt.[8]

**VI.      Conclusion**

For the reasons discussed above, the Court will grant Defendant's Motion for Summary

Judgment.  An appropriate Order follows.

O:\CIVIL 09-10\10-3807 Lorandeau v. Capital\Loreandeau MSJ memorandum.wpd

---

[8] The Court notes, but does not rely on, the following facts from the record.  Plaintiff is an employee in her counsel's law office.  Pl.'s Dep. 7:21-8:12 (D.A. 7-8).  Given the de minimis amount of the dispute, and the absence of any support for Plaintiff's claims from business records or other documents which would have been kept in the ordinary course of her relationship with Abington Memorial Hospital, any objective observer would question the credibility and bona fides of her complaint.  The circumstances suggest strongly that this complaint is motivated by the prospect of Plaintiff collecting attorney's fees.

This case relies on a hyper-technical interpretation of the statute, which the Court has found legally incorrect.  This Court is fully aware of the policy factors which mandate liberal interpretation of the FDCPA, which is designed to compensate plaintiffs for wrongful conduct.  However, the facts suggest that the case is being pursued for other reasons.